## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN DOE #1, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**AMERICAN FEDERATION OF**<br>**GOVERNMENT EMPLOYEES, et al.,**<br><br>**Defendants.** | **Civil Action No. 20-1558 (JDB)** |

## MEMORANDUM OPINION

Plaintiffs have alleged that Jeffrey David Cox, the former National President of the American Federation of Government Employees ("AFGE"), committed serious misconduct while in office and that AFGE and many high-ranking AFGE officials failed to exercise their duties to prevent the alleged bad acts. See Second Am. Compl. [ECF No. 32] ¶¶ 822–944. Roughly one year ago, this Court issued a comprehensive Memorandum Opinion dismissing many of plaintiffs' claims and specifying precisely which claims could continue in this litigation. See Doe #1 v. Am. Fed'n of Gov't Emps., 554 F. Supp. 3d 75, 125 (D.D.C. 2021) ("The only claims that are not subject to dismissal and hence remain are . . . ."). In its accompanying Order, the Court instructed plaintiffs to file a third amended complaint "that is consistent with the accompanying Memorandum Opinion" and explicitly noted that this amended complaint "shall be limited to the claims that have not been dismissed from this lawsuit and the factual allegations supporting those claims." Order, Aug. 11, 2021 [ECF No. 59] ("Aug. 2021 Order") at 2.

In blatant disregard of this directive, plaintiffs subsequently submitted several different third amended complaints, none of which comply with the Court's Order. See generally Am. Compl. [ECF No. 62] ("First Proposed Third Am. Compl."); Third Am. Compl. [ECF No. 72]

("Second Proposed Third Am. Compl."); Corrected Third Am. Compl. [ECF No. 73-1] ("Third Proposed Third Am. Compl."); Third Am. Compl [ECF No. 74] ("Fourth Proposed Third Am. Compl.").  AFGE responded to plaintiffs' actions by filing two motions to strike and requesting both monetary sanctions and dismissal of plaintiffs' claims with prejudice.  See generally Def. AFGE's Mot. to Strike First Proposed Third Am. Compl. [ECF No. 64] ("AFGE's First Mot. to Strike & for Sanctions"); Def. AFGE's Mot. to Strike Pls.' Fourth Proposed Third Am. Compl. [ECF No. 78] ("AFGE's Second Mot. to Strike & for Dismissal").  Plaintiffs have filed a motion for leave to amend their first proposed third amended complaint, see generally Pls.' Mot. for Leave to Amend First Proposed Third Am. Compl. [ECF No. 63] ("Mot. to Amend First Proposed Third Am. Compl."), a cross motion for sanctions, see generally Pls.' Cross Mot. for Sanctions [ECF No. 77] ("Cross Mot. for Sanctions"), and—finally—a belated motion for reconsideration of this Court's August 2021 Order, see generally Pls.' Mot. for Recons. & for Leave to File a Fourth Am. Compl. [ECF No. 92] ("Mot. for Recons.").  For the reasons explained below, the Court will deny plaintiffs' motions and strike plaintiffs' fourth proposed third amended complaint.  The Court will also grant AFGE certain sanctions but deny AFGE's request that the Court dismiss plaintiffs' clams with prejudice.

## Background

### I.  Factual Background and the Court's August 2021 Memorandum Opinion

The Court thoroughly described the factual history of this litigation in its prior Memorandum Opinion, see Doe #1, 554 F. Supp. 3d at 85–87, and the discussion here will hence be abbreviated.  According to plaintiffs' second amended complaint, AFGE is the largest federal employee union in the United States.  Second Am. Compl. ¶ 86.  Cox is a former AFGE National President.  Id. ¶ 88.  "In fall 2019, news reports began circulating that Cox had sexually harassed

multiple AFGE employees during his tenure as National President and that AFGE had failed for years to address complaints about inappropriate behavior by Cox and other elected union officials." Doe #1, 554 F. Supp. 3d at 86 (internal citations omitted); accord Second Am. Compl. ¶¶ 330, 333–34. The second amended complaint lists twelve plaintiffs, all of whom "are current or former AFGE employees, elected officials for local AFGE unions, AFGE members, employees of AFGE contractors, and family members." Doe #1, 554 F. Supp. 3d at 86 (citing Second Am. Compl. ¶¶ 58–84). Plaintiffs filed the second amended complaint against "Cox, AFGE, and thirteen AFGE officials and high-level staff members (the 'Individual AFGE Defendants'), asserting claims under both federal and state law." Id. at 85; see also Second Am. Compl. at 2–3.[1]

AFGE and the Individual AFGE Defendants moved to dismiss almost all of plaintiffs' claims in the second amended complaint. See generally Mem. of Law. in Supp. of Def. AFGE & 13 Individual AFGE Defs.' Rule 12(b)(1) & 12(b)(6) Mot. to Dismiss All of the Claims Set Out in Pls.' Second Am. Compl. Except for Pl. Jocelynn Johnson's 42 U.S.C. § 1981 Claim Against AFGE [ECF No. 46-1] ("Mot. to Dismiss Second Am. Compl."). In a lengthy Memorandum Opinion, the Court took great care to consider the viability of plaintiffs' numerous claims, see Doe #1, 554 F. Supp. 3d at 91–121, and concluded:

> [T]he entire complaint must be dismissed except for the following claims: [Annette] Wells's claim against Cox for misappropriating AFGE resources under section 501(b) [of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501 ("LMRDA")] (Count 7); [Jocelynn] Johnson's wrongful termination claims against AFGE and Cox under section 1981 (Count 5); and [Rocky] Kabir's racially hostile work environment claims against AFGE and Cox under section 1981 and the [D.C. Human Rights Act] (Counts 5 and 9).

---

[1] As the Court previously noted, "the second amended complaint purports to state at least thirty sets of non-federal claims and ten sets of federal claims. Accounting for the fact that each set of claims is actually levied at fourteen or fifteen defendants, the number of total claims tops 500." Doe #1, 554 F. Supp. 3d at 114–15 (footnote omitted).

Id. at 121; accord id. at 125.  In the August 2021 Order accompanying this Memorandum Opinion, the Court again specified exactly which claims could proceed in this litigation and ordered the remaining plaintiffs to file a third amended complaint "that is consistent with the accompanying Memorandum Opinion" and "limited to the claims that have not been dismissed from this lawsuit and the factual allegations supporting those claims."  Aug. 2021 Order at 2.

## II.    Litigation After the August 2021 Memorandum Opinion

Plaintiffs filed their first proposed third amended complaint in September 2021.  First Proposed Third Am. Compl. at 76.  The complaint contains several claims other than those the Court identified as still viable in its August 2021 Order.  For instance, count one includes Johnson's hostile work environment and retaliation claims—even though the Court explicitly rejected these claims in its prior Memorandum Opinion.  Compare First Proposed Third Am. Compl. ¶ 485 ("[Defendants] discriminated against Plaintiff Jocelynn Johnson on the basis of her race by creating a hostile work environment for Ms. Johnson, retaliating against Ms. Johnson for engaging in protected activities . . . ."), with Doe #1, 554 F. Supp. 3d at 106 ("Johnson's retaliation theory is waived because she failed to present it in the second amended complaint."), and id. at 118 ("[A]s the Court has already explained, Johnson's wrongful termination amounts to a discrete incident that does not support a hostile work environment claim."); see also id. at 107 n.16 (explaining why any hostile work environment claims brought by Johnson under § 1981 would fail).  Count three of the first proposed third amended complaint likewise revives claims under § 501 of the LMRDA that the Court had previously rejected.  Compare First Proposed Third Am. Compl. ¶¶ 500–02 ("Defendant Cox breached his duties to the labor organization . . . when [he] racially discriminated against, sexually harassed, sexually assaulted and battered [plaintiffs] . . . ."), with Doe #1, 554 F. Supp. 3d at 94 (concluding that Cox could not be liable under § 501 for the alleged sexual

misconduct because plaintiffs failed to "identif[y] any provision of the union constitution, bylaws, or other governing rules that imposed a duty on Cox to refrain from [the alleged wrongs]").  The complaint also contains entirely new claims not alleged in the second amended complaint or discussed in the August 2021 Memorandum Opinion.  See, e.g., First Proposed Third Am. Compl. ¶ 494 (containing new retaliation and wrongful termination claims brought by Kabir).

On the same day that plaintiffs filed their first proposed third amended complaint, they also moved for leave to amend that complaint to add many of the Individual AFGE Defendants the Court had dismissed from the case.  Mot. to Amend First Proposed Third Am. Compl. ¶¶ 2–3. Plaintiffs requested permission to add these defendants so that Johnson and Kabir could pursue § 1981 claims against them for failing "to exercise their supervisory authority to discipline or remove Cox."  Id. ¶¶ 13–14.  Plaintiffs' motion does not acknowledge that the Court had previously rejected the § 1981 claims that Johnson and Kabir wished to bring against the Individual AFGE Defendants.  See Doe #1, 554 F. Supp. 3d at 106–07 (dismissing "Johnson's section 1981 claims against all Individual AFGE Defendants" because "the second amended complaint does not plausibly establish that they" were personally involved in her wrongful termination and because "a decision-making process that is 'arbitrary' is not necessarily 'racially discriminatory.'" (citation omitted)); id. at 109 ("Kabir has failed to state a section 1981 claim against any of [the Individual AFGE Defendants] because he does not allege that they '"directly participated" in the alleged discriminatory acts'—all of which were committed by Cox."  (citation omitted)).

AFGE responded to plaintiffs' filings by moving to strike the first proposed third amended complaint and requesting that the Court both impose monetary sanctions and warn plaintiffs that further non-compliance with the Court's August 2021 Order would result in dismissal of their claims against AFGE with prejudice.  See AFGE's First Mot. to Strike & for Sanctions at 1–2.

The remaining Individual AFGE Defendants also filed a memorandum in opposition to plaintiffs' motion for leave to amend the first proposed third amended complaint.  See generally Ten Named Individual Defs.' Mem. in Opp'n to Mot. to Amend First Proposed Third Am. Compl. [ECF No. 65].

Plaintiffs then requested an extension of time to "file a motion for leave to file Plaintiffs' motion for leave to strike and refile" plaintiffs' third amended complaint.  Consent[2] Mot. for Extension of Time Until Oct. 10, 2021 [ECF No. 67] at 1.  The Court granted plaintiffs' motion and permitted plaintiffs to withdraw their third proposed amended complaint and to "file a complaint that conforms with . . . this Court's August 11, 2021 Order."  Min. Order, Oct. 5, 2021.

Plaintiffs filed their second proposed third amended complaint on October 11.  See generally Second Proposed Third Am. Compl.  This complaint again contains claims beyond those identified as viable in the August 2021 Order.  For instance, it reiterates Johnson's hostile work environment and retaliation claims, Second Proposed Third Am. Compl. ¶¶ 163, 168, 171(a)–172, 176–77, and also contains state law claims the Court had previously rejected, compare id. ¶¶ 194–208 (articulating Johnson's and Kabir's negligent supervision claims against AFGE), with Doe #1, 554 F. Supp. 3d at 121 ("Hence, the Court will dismiss Johnson's negligent supervision claims in Count 11 under Rule 12(b)(6)."); compare Second Proposed Third Am. Compl. ¶¶ 210–12, 216–18 (articulating Johnson's and Kabir's intentional infliction of emotional distress claims against Cox and AFGE), with Doe #1, 554 F. Supp. 3d at 120 ("In sum, all of Johnson's IIED claims will be dismissed under Rule 12(b)(6).").

---

[2] As AFGE's opposition to this motion and plaintiffs' reply demonstrate, the nature of AFGE's consent to plaintiffs' request is disputed.  Def. AFGE's Resp. to Pls.' Purported "Consent" Mot. [ECF No. 68] at 1–2 & n.1; Reply to Def. AFGE's Resp. [ECF No. 69] at 1–2.  The Court need not resolve this issue now, however.

The next day, plaintiffs moved to withdraw both of the previously filed third amended complaints and attached a "corrected" third amended complaint that plaintiffs requested leave to file.  Pls.' Mot. to Withdraw the Third Am. Compls. Filed in This Case [ECF No. 73] at 1, 3. Although the titles of the causes of action in the third proposed third amended complaint comply with the claims the Court stated could proceed in this litigation, see Third Proposed Third Am. Compl. at 26–29, several of the allegations within those claims do not, see, e.g., id. ¶ 159 ("Defendant Cox's termination of Plaintiff Johnson for racially discriminatory reasons and in retaliation for engaging in protected activities . . . ." (emphasis added)); id. ¶ 168 (alleging that Cox violated § 501 of the LMRDA by ordering employees to work on his re-election campaign, a new claim not alleged in the second amended complaint or discussed in the August 2021 Memorandum Opinion).  The Court granted plaintiffs permission to withdraw the previous iterations of their third amended complaint "and file a complaint that conforms with . . . this Court's August 11, 2021 Order."  Min. Order, Oct. 12, 2021.

On October 13, plaintiffs filed the fourth (and final) proposed version of their third amended complaint.  Fourth Proposed Third Am. Compl. at 41.  One notable difference between this fourth iteration and the third version that plaintiffs sought leave to file is that the fourth version adds a sixth cause of action reviving the § 501 claims against Cox and the Individual AFGE Defendants that the Court had previously dismissed.  See id. ¶¶ 172–73 (claiming that Cox breached his fiduciary duty by "sexually harassing, sexually abusing, racially discriminating against, bullying, and using racial, religious, and ethnic slurs toward" plaintiffs and that "[c]ertain unnamed AFGE officials" violated their fiduciary duties by not taking action to discipline Cox). Plaintiffs support their allegations by citing to Article XXIII, § 2(k) of the AFGE constitution, id. ¶ 170, which prohibits "[b]ullying, harassment and/or discrimination on the basis of"

7

characteristics including "race, color, religion, national origin, sex, [and] age," AFGE Nat'l Const. art. XXIII, § 2(k), available at https://www.afge.org/globalassets/documents/afge-national-constitution.pdf.

Two days later, plaintiffs responded to AFGE's first motion to strike and moved for sanctions against AFGE.  Opp'n to AFGE's First Mot. to Strike & for Sanctions [ECF No. 76] at 15; Cross Mot. for Sanctions at 15.  These two filings are the same, and both argue that the Court should sanction AFGE for "misrepresenting to the Court in its November 23, 2020 motion to dismiss . . . that the AFGE National Constitution does not impose a section 501 fiduciary duty on Defendant Cox and the named AFGE Defendant officials to refrain from engaging in racial discrimination, religious discrimination, sexual harassment, sexual discrimination and bullying." Cross Mot. for Sanctions ¶ 1.  The filings further state that, in light of Article XXIII, § 2(k) of the AFGE constitution, the Court erred in dismissing many of Wells's § 501 claims, id. ¶ 6, and that plaintiffs would file requests for reconsideration of the Court's prior decision, id. ¶¶ 52–55. Plaintiffs also state that they were "entitled to restore and did restore all counts originally contained in their first Third Amended Complaint . . . including all counts pertaining to the named AFGE Defendant officials['] violation of their section 501 fiduciary duties."  Id. ¶ 13.  Plaintiffs' filings contain contradictory language about what claims plaintiffs "restored" to the litigation.  Compare id. ¶ 27 ("Plaintiffs restored all related state claims originally filed in their Third Amended Complaint [ECF 62] citing this Court's pendent jurisdiction."), with id. ¶ 50 ("With leave of the Court, Plaintiffs filed [the fourth proposed third amended complaint] deleting all counts and state claims except those directed by the Court in its August 11, 2021 Order with one exception.").  The Court need not resolve these inconsistencies now, however.

AFGE then filed its second motion to strike, arguing that the Court should dismiss plaintiffs' claims against AFGE and the Individual AFGE Defendants with prejudice. AFGE's Second Mot. to Strike & for Dismissal at 1. AFGE argues that dismissal with prejudice is justified given that plaintiffs acknowledged that they violated this Court's August 11, 2021 Order by reinstating Wells's § 501 claim against Cox for violating the AFGE constitution by engaging in sexual misconduct. See AFGE's Second Mot. to Strike & for Dismissal at 5 ("We cannot conceive of a more brazen violation of this Court's August 11 Order . . . ."). AFGE also contends that plaintiffs attempted to deceive the Court by framing Wells's § 501 claim as a claim against Cox only but also making it clear that Wells's claim applied to some or all of the Individual AFGE Defendants as well. Id. at 5–7. AFGE highlights that the complaint's caption includes "AFGE Officers, Employees and Agents," id. at 6 (quoting Fourth Proposed Third Am. Compl. at 1), and that the final substantive allegation is that "'[c]ertain unnamed AFGE officials' breached their fiduciary duty by 'taking no action to discipline Cox'" id. (alteration in original) (quoting Fourth Proposed Third Am. Compl. ¶ 173).[3]

AFGE filed a reply in further support of its first motion to strike and for sanctions as well as an opposition to plaintiffs' cross motion for sanctions. See generally AFGE's Reply in Supp. of AFGE's First Mot. to Strike & for Sanctions [ECF No. 79]; Opp'n to Cross Mot. for Sanctions [ECF No. 80]. These two filings are the same, and in them, AFGE argues that the Individual AFGE Defendants' representations about fiduciary duties under AFGE Constitution were limited to statements about plaintiffs' failure to establish a successful § 501 claim and were accurate.

---

[3] AFGE's motion details several other ways in which plaintiffs' fourth proposed third amended complaint allegedly violates this Court's prior Order and rules of practice in this Circuit, e.g., AFGE's Second Mot. to Strike & for Dismissal at 6 (arguing that alleging wrongdoing by unnamed defendants is proper only where the plaintiff is in doubt of the proper defendants' identities); id. at 9 (claiming plaintiffs introduced new § 501 claims by adding allegations about financial malfeasance by AFGE officers other than Cox), but the Court will not summarize all the numerous alleged violations at this time.

Opp'n to Cross Mot. for Sanctions at 2.  AFGE further contends that the provision of the AFGE constitution that plaintiffs now cite (Article XXIII, § 2(k)) does not create any fiduciary duties under the LMRDA.  Id. at 2–3.

Plaintiffs then filed a reply in further support of their cross motion for sanctions and a response in opposition to AFGE's second motion to strike.  See generally Pls.' Reply to Opp'n to Cross Mot. for Sanctions [ECF No. 81] ("Reply in Supp. of Cross Mot. for Sanctions"); Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal [ECF No. 82].  These filings acknowledge that plaintiffs changed the substance of their complaint in light of the Court's prior Memorandum Opinion.  Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 10–11 (acknowledging an oversight in the second amended complaint that led to dismissal of claims and stating that "Plaintiffs have corrected the" problem in the fourth proposed third amended complaint by adding new factual allegations).  Plaintiffs also reiterated their contention that the Court should reinstate certain of Wells's § 501 claims, id. at 2, and again stated that plaintiffs intended to file a formal motion for reconsideration and for leave to amend plaintiffs' complaint based on Article XXIII, § 2(k) of the AFGE constitution, id. at 18.  AFGE filed a short reply in support of its second motion to strike and for dismissal that asserts that plaintiffs have offered "no genuine defense or justification for their repeated violations of the Court's Order . . . and no meaningful arguments . . . as to why that conduct does not warrant a dismissal with prejudice."  Def. AFGE's Reply Mem. in Supp. of AFGE's Second Mot. to Strike & for Dismissal [ECF No. 83] at 2.

After reviewing these filings, the Court ordered plaintiffs to file any motion for reconsideration by not later than December 1, 2021.  Min. Order, Nov. 9, 2021.  Plaintiffs timely filed their motion in December.  See Mot. for Recons. at 30.  Both AFGE and Cox filed oppositions to plaintiffs' motion in February, Def. AFGE's Br. in Opp'n to Mot. for Recons. [ECF No. 95]

("AFGE's Opp'n to Mot. for Recons.") at 23; Def. J. David Cox's Mem. in Opp'n to Mot. for Recons. [ECF No. 96] ("Cox's Opp'n to Mot. for Recons.") at 18, and plaintiffs filed their reply in March, Reply to Def. AFGE's & Def. Cox's Opp'ns to Mot. for Recons. [ECF No. 100] ("Reply in Supp. of Mot. for Recons.") at 22.  All motions are now ripe for this Court's consideration.

## Analysis

Plaintiffs have three pending motions before the Court—see Mot. to Amend First Proposed Third Am. Compl.; Cross Mot. for Sanctions; Mot. for Recons.—and AFGE has two pending motions—see AFGE's First Mot. to Strike & for Sanctions; AFGE's Second Mot. to Strike & for Dismissal.  Although plaintiffs filed their motion for reconsideration last and only after judicial prompting, that reconsideration motion is the logical starting point for this Court's analysis as its resolution will impact the merits of the parties' other requests.  After resolving plaintiffs' motion for reconsideration, the Court will decide plaintiffs' motion to amend their first proposed third amended complaint and AFGE's request to strike that complaint.  The Court will then turn to AFGE's motion to strike the fourth proposed third amended complaint before discussing the competing sanctions requests and AFGE's dismissal requests.

**I.    Plaintiffs' Motion for Reconsideration**

"[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Reconsideration of such a decision "is available under the standard 'as justice requires.'" Mahoney v. U.S. Capitol Police Bd., 566 F. Supp. 3d 22, 25 (D.D.C. 2022) (quoting Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006)).  A court's discretion to grant reconsideration under Rule 54(b) is "limited by the law of the case doctrine and 'subject to the

caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted); accord Mahoney, 566 F. Supp. 3d at 25 ("The 'as justice requires' standard is hardly a free pass . . . .").

When deciding whether justice requires granting a motion for reconsideration, a court considers whether it "'has patently misunderstood a party,' 'has made a decision outside the adversarial issues presented to the Court by the parties,' 'has made an error not of reasoning but of apprehension,'" and whether there has been "a controlling or significant change in the law or facts . . . since the submission of the issue to the Court." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (citation omitted); accord United States v. Sutton, Crim. No. 21-0598 (PLF), 2021 WL 5999407, at *2 (D.D.C. Dec. 20, 2021). "[A]rguments that could have been, but were not, raised previously and arguments that the court has already rejected are not appropriately raised in a motion for reconsideration." United States v. Sullivan, Crim. A. No. 21-78 (EGS), 2022 WL 3027007, at *2 (D.D.C. Aug. 1, 2022) (quoting United States v. Booker, 613 F. Supp. 2d 32, 34 (D.D.C. 2009)); accord Terrell v. Mr. Cooper Grp., Inc., Civ. A. No. 20-0496 (CKK), 2021 WL 2778542, at *3 (D.D.C. July 2, 2021) ("A Rule 54(b) motion 'cannot be used to reargue facts and theories upon which a court has already ruled or to present theories or arguments that could have been advanced earlier.'" (citation omitted)). "In order to promote finality, predictability and economy of judicial resources, 'as a rule a court should be loathe to revisit its own prior decisions in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp. 2d 82, 85 (D.D.C. 2009) (quoting Lederman v. United States, 539 F. Supp. 1, 2 (D.D.C. 2008)) (cleaned up).

Broadly speaking, plaintiffs present four arguments in favor of reconsidering portions of this Court's prior Order.  The first argument is that the Court should reinstate the § 501 claims alleged against Cox and the Individual AFGE Defendants in count six of the second amended complaint because Article XXIII, § 2(k) forbids union members from bullying, harassing, or discriminating against individuals on the basis of a variety of characteristics.  Mot. for Recons. at 4–12.  The second is that the Court should reinstate the § 501 claims alleged against the Individual AFGE Defendants in count seven of the second amended complaint because the Court erred in finding that Eugene Hudson—who is not one of the Individual AFGE Defendants—"was the only [member of AFGE's governing body] who had any knowledge of Cox's improper CCS Limo expenditures."  Id. at 18–21.  Plaintiffs' third claim is that the Court should revive many of the § 1981 claims against AFGE and the Individual AFGE Defendants in count five of the second amended complaint due to the "joint employer doctrine."  Id. at 22–27.  Finally, plaintiffs contend that the Court should reconsider its decision to decline to exercise jurisdiction over a myriad of plaintiffs' state law claims.  Id. at 21–22, 27–28.  The Court will address each argument in turn.

A. <u>The Court Will Not Reinstate Count Six of the Second Amended Complaint</u>

Section 501(a) of the LMRDA requires that union officers and representatives, among other things, "hold union money or property for the sole benefit of the union and its members, manage union money or property in accordance with the union's own governing rules, and refrain from dealing with the union as an adverse party or on behalf of one."  <u>Doe #1</u>, 554 F. Supp. 3d at 93; <u>accord</u> 29 U.S.C. § 501(a).  Section 501(b) permits individual union members to sue union officers and representatives for violating these fiduciary duties under § 501(a) in order to "recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization."  29 U.S.C. § 501(b).

Courts are split over the scope of a union official's fiduciary duties under § 501(a).  Doe #1, 554 F. Supp. 3d at 93–94.  "Some courts have held that section 501(a) only concerns the handling of union money or property."  Id. at 93 (citing Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964)).  Other courts have disagreed, holding that the statute imposes fiduciary duties "even when no 'monetary interest of the union is involved.'"  Id. at 94 (quoting Stelling v. Int'l Bhd. of Elec. Workers Loc. Union No. 1547, 587 F.2d 1379, 1386–87 (9th Cir. 1978)).  The D.C. Circuit has not explicitly endorsed either approach, id. (citing Quinn v. DiGiulian, 739 F.2d 637, 653 n.29 (D.C. Cir. 1984) ("This Court has three times refused to adopt either view.")), but it has cautioned against "adopt[ing] a construction of section 501 that would bring under the scrutiny of the federal courts virtually every aspect of the union's internal affairs, however remote from the handling of funds and property, conflicts of interest, and other issues traditionally subject to fiduciary principles," Quinn, 739 F.2d at 653 n.30; see also Yager v. Carey, Civ. A. No. 93-1054 (RCL), 1993 WL 328128, at *10 (D.D.C. June 29, 1993) ("Given the Circuit Court's narrow view of [§ 501]'s scope, this court cannot recognize plaintiffs' claims unless they relate to financial matters.").  Even courts that have adopted a broad view of § 501 have indicated that there are limits on a union member's ability to sue union officers for violation of their fiduciary duties.  E.g., Stelling, 587 F.2d at 1387 (adopting the broad view but noting that this interpretation "does not mean that courts have power to intervene in intra-union affairs at slight provocation or on any invitation.  Rather we confirm . . . that judicial interference should be undertaken only with great reluctance."); see also Quinn, 739 F.2d at 653 n.30 ("We are not necessarily convinced that even a broad view of the scope of section 501's fiduciary duty would necessarily encompass the duty to protect individual political rights under the LMRDA.").

14

Count six of plaintiffs' second amended complaint alleged that Cox violated his fiduciary duties under § 501(a) of the LMRDA by "sexually harass[ing], sexually assaul[ting] and batter[ing]" many individuals.  Second Am. Compl. ¶¶ 880–82.  Count six also alleged that the Individual AFGE Defendants violated their fiduciary duties by, broadly speaking, failing to act against Cox for this misconduct.  Id. ¶¶ 884–89.[4]  AFGE and the Individual AFGE Defendants moved to dismiss these claims by arguing that they were "thinly disguised state-law tort claim[s]" that had "nothing whatsoever to do with Cox's or the 13 Individual AFGE Defendants' conduct of AFGE's internal affairs in alleged nonconformity with their asserted duties under the AFGE Constitution."  Mot. to Dismiss Second Am. Compl. at 12.

The Court granted the motion to dismiss count six.  Doe #1, 554 F. Supp. 3d at 97.  After summarizing the competing views of § 501(a)'s scope, id. at 93–94, the Court held that it did not "need [to] define the exact scope of section 501(a) . . . because, even under a broad interpretation of the statute" count six failed to state a claim, id. at 94.  The Court noted that "Wells has not identified any provision of the union constitution, bylaws, or other governing rules that imposed a duty on Cox to refrain from sexual harassment, assault, and battery."  Id.  The Court also concluded that plaintiffs' claims against the Individual AFGE Defendants similarly failed because plaintiffs did not "identify an official duty—imposed by an AFGE governing document—that an Individual AFGE Defendant plausibly breached."  Id. at 95.

In their motion for reconsideration, plaintiffs now cite Article XXIII, § 2(k) of the AFGE constitution.  Mot. for Recons. at 10.  Article XXIII, § 2(k) states that "[o]ffenses against this Federation include . . . [b]ullying, harassment and/or discrimination on the basis of" characteristics

---

[4] Plaintiffs' allegations against the Individual AFGE Defendants included, inter alia, claims that the Individual AFGE Defendants violated their fiduciary duties by endorsing Cox for re-election, not processing an investigation of his misconduct, and entering into a separation agreement with him.  Id.

including "race, color, religion, national origin, sex, [and] age," AFGE Nat'l Const. art. XXIII, § 2(k).   Furthermore—although plaintiffs do not cite this provision in their motion for reconsideration—they have claimed in other filings that the Individual AFGE Defendants' alleged inaction in the face of Cox's misconduct violated Article XXIII, § 2(j), e.g., Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 14, which states that it shall be an offense against the Federation to "[a]ssist[], counsel[], or aid[] any member or officer of the Federation or any of its affiliates to commit any of the offenses herein set forth," AFGE Nat'l Const. art. XXIII, § 2(j).

Plaintiffs' new citations to these constitutional provisions do not warrant reconsideration of this Court's prior decision.  As plaintiffs' motion thoroughly details, Article XXIII, § 2(k) has been a part of the AFGE constitution since 2018, Mot. for Recons. at 6–7, well before the Court issued its August 2021 Order and even before plaintiffs initiated this litigation in 2020.[5]  Yet plaintiffs failed to cite this provision in either their second amended complaint or their opposition to defendants' motion to dismiss that complaint.  "[A]rguments that could have been, but were not, raised previously . . . are not appropriately raised in a motion for reconsideration." Sullivan, 2022 WL 3027007, at *2.

Plaintiffs acknowledge that they failed to discuss this constitutional provision before the Court dismissed count six of their complaint, Reply in Supp. of Mot. for Recons. at 3, and present four arguments for excusing this failure.  First, as indicated by plaintiffs' cross motion for sanctions, plaintiffs imply that citing this constitutional provision was defendants' responsibility. See Cross Mot. for Sanctions ¶ 12.  The Court will discuss this assertion in greater depth when assessing plaintiffs' request for sanctions, but the Court disagrees; it was plaintiffs' responsibility to support their claims with appropriate citations and arguments.

---

[5] Plaintiffs have not given the Court any reason to believe that § 2(j) was enacted after the Court's August 2021 Order.

Plaintiffs' second argument appears to be that it does not matter that they never discussed this specific provision because the AFGE constitution is a publicly available document of which the Court could, and did, take judicial notice.  See Mot. for Recons. at 5–6; Doe #1, 554 F. Supp. 3d at 95 n.8.  Again, however, the fact that the AFGE constitution is publicly available did not relieve plaintiffs of their burden to respond to defendants' motion to dismiss by identifying the specific constitutional provisions Cox and the Individual AFGE Defendants violated with regard to Cox's alleged sexual misconduct.  As the Court noted in its prior Memorandum Opinion, it "is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  Doe #1, 554 F. Supp. 3d at 96 (quoting Herron v. Fannie Mae, Civ. A. No. 10-943 (RMC), 2016 WL 1177918, at *15 (D.D.C. Mar. 8, 2016)).  Plaintiffs chose to dedicate their brief to arguing that the fiduciary duties imposed by § 501(a) "extend to all the activities of union officials and other union agents or representatives,"[6] Pls.' Opp'n to Mot. to Dismiss Second Am. Compl. [ECF No. 52] at 6–7, 21–33, and that Cox's misconduct was more "egregious" than the misconduct at issue in other § 501 cases, id. at 9.  Plaintiffs decided against discussing Article XXIII, §§ 2(k) or 2(j) and explaining why those provisions create fiduciary duties that Cox and the Individual AFGE Defendants violated.  A motion for reconsideration does not give plaintiffs a second opportunity to rethink that choice and support their claims with new theories and arguments.

Plaintiffs' third argument for excusing their failure to discuss §§ 2(k) and 2(j) until now is that their failure is not fatal because the Court has jurisdiction over plaintiffs' claims.  Reply in Supp. of Mot. for Recons. at 3 ("The lack of reference to a specific statute, or erroneous reference,

---

[6] A contention that is certainly debatable.  See Quinn, 739 F.2d at 653 n.30 (noting that even courts applying the broad view of § 501 recognize limits on what can be considered a fiduciary duty of a union officer); accord Stelling, 587 F.2d at 1386.

should not defeat jurisdiction when it otherwise exists.").  But the Court already determined that it has jurisdiction over Wells's § 501 claims, Doe #1, 554 F. Supp. 3d at 93, and nonetheless ruled that these claims were legally deficient, id. at 97.  The Court's ability to exercise jurisdiction over plaintiffs' claims is thus not at issue here, and plaintiffs' many arguments about jurisdiction are irrelevant to whether the Court should reconsider its prior decision.

Finally, plaintiffs attempt to excuse their failure by citing the lenient threshold complaints must overcome to survive a motion to dismiss.  See Reply in Supp. of Mot. for Recons. at 13; Reply in Supp. of Cross Mot. for Sanctions at 8 ("Contrary to AFGE's contention . . . Plaintiffs had no obligation at the complaint filing stage to 'point to a provision in AFGE's Constitution' that imposed an obligation on Cox not to engage in section 2(k) offenses."); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting the liberal pleading standard does not require "detailed factual allegations" (citation omitted)).  But the Court is not reviewing plaintiffs' second amended complaint with fresh eyes as if it were considering defendants' motion to dismiss in the first instance.  At this stage, it is plaintiffs' burden to articulate "extraordinary circumstances" that would justify this Court overturning its prior decision, Pueschel, 606 F. Supp. 2d at 85, and citations to a constitutional provision that plaintiffs could have cited in opposition to defendants' motion to dismiss, but failed to do so, are not sufficient, see Shvartser v. Lekser, 330 F. Supp. 3d 356, 360 (D.D.C. 2018) ("[E]ven a Rule 54(b) motion cannot be used . . . to 'present[] theories or

arguments that could have been advanced earlier.'"   (third alteration in original) (citation omitted)).[7]

B.  <u>The Court Will Not Reinstate Count Seven Against the Individual AFGE Defendants</u>

Count seven of plaintiffs' second amended complaint contained a different set of § 501 claims against Cox and the Individual AFGE Defendants.  Second Am. Compl. ¶¶ 895–900.  These claims focused on Cox's improper use of AFGE limousine services and the Individual AFGE Defendants' failure to prevent Cox from misusing these resources.  <u>Id.</u>  As the Court noted in its prior Memorandum Opinion, "[t]he theory that Cox breached his fiduciary duty to AFGE by improperly expending AFGE resources for his own personal benefit presents a straightforward section 501 claim," <u>Doe #1</u>, 554 F. Supp. 3d at 97, and the Court permitted count seven to proceed against Cox, <u>id.</u> at 98.

But the Court dismissed count seven against the Individual AFGE Defendants.  <u>Doe #1</u>, 554 F. Supp. 3d at 101.  The Court first observed that plaintiffs could bring § 501 claims against the Individual AFGE Defendants even though plaintiffs did not allege that those defendants personally misused AFGE resources.  <u>Id.</u> at 98.  But the Court then explained that the second amended complaint failed to plausibly establish such claims because plaintiffs did not allege that

---

[7] Although plaintiffs' arguments about Article XXIII, § 2(k) do not warrant reconsideration of the Court's decision to dismiss count six for the threshold reason that these arguments could, and should, have been raised earlier, the Court also notes that it is questionable whether plaintiffs' citations would establish valid § 501(b) claims against Cox or the Individual AFGE Defendants with respect to Cox's sexual misconduct.  Under Article XXIII, § 2, offenses against AFGE include wrongs as undefined as "[e]ngaging in conduct unbecoming a union member," AFGE Nat'l Const. art. XXIII, § 2(e), and "[w]orking in the interest of or becoming a member of the Communist Party," <u>id.</u> art. XXIII, § 2(b).  Although plaintiffs assert that an AFGE official's violation of any provision of Article XXIII, § 2 is inherently a violation of that official's fiduciary duties under § 501(a), <u>see</u> Pls.' Reply to Def. AFGE's Opp'n to Pls.' Cross Mot. for Sanctions at 10 ("The Court should agree that an 'offense against the Federation' is necessarily a breach of an officers' fiduciary duty."), this approach "would bring under the scrutiny of the federal courts virtually every aspect of the union's internal affairs, however remote from . . . issues traditionally subject to fiduciary principles," <u>Quinn</u>, 739 F.2d at 653 n.30.  Hence, even if the Court were to adopt the broad view of § 501(a), it is unlikely that the Court would adopt an interpretation sufficiently broad to encompass all the alleged wrongs plaintiffs identified in count six.

any of the Individual AFGE Defendants knew Cox was misusing AFGE's resources.  Id. at 99–100.  The Court noted that the only member of AFGE's governing body who plaintiffs alleged had actual knowledge of Cox's improper expenditures was the National Secretary-Treasurer ("NST") Hudson, that Hudson was not a defendant, and that plaintiffs did not allege that Hudson conveyed his concerns to any of the Individual AFGE Defendants.  Id.

Plaintiffs ask the Court to reconsider this ruling for two main reasons.  Mot. for Recons. at 18.  First, plaintiffs state that they "have previously argued in pleadings filed in this case[ that] NST Hudson twice informed [AFGE's governing body] in 2015 and 2017 that NST Hudson had questioned President Cox about his expense vouchers submitted for reimbursement for late night and weekend usage of the" limousine service.  Id.  Although plaintiffs do not back up this argument with any citations, it appears that the pleadings to which plaintiffs refer were filed after this Court's August 2021 Order.  See Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 10–11 ("The Court dismissed Ms. Wells' section 2(h) charges against all named AFGE officers on the grounds that Plaintiffs did not allege that the named Defendants were made aware of NST Hudson's complaints about Cox's improper [limousine] expenditures . . . .  The Court is correct.  This was an oversight in Plaintiffs' Second Amended Complaint.  Plaintiffs have corrected the omission in Plaintiffs' [fourth proposed third amended complaint] . . . .").  But the Court did not grant plaintiffs permission to amend their complaint to add these allegations, and plaintiffs cannot use these new allegations to argue that the Court's prior Order was mistaken.

Plaintiffs' second argument is based on a May 2021 report from forensic auditor CohnReznick.  See Mot. for Recons. at 19–21.  Plaintiffs claim that this report reveals that Cox did not provide receipts or supporting documentation for more than a third of his limousine expenses and that one of the Individual AFGE Defendants—Everett Kelley—approved "nearly all

of" Cox's invoices.  Id. at 20.  Plaintiffs failed to include any portion of this report as an exhibit to their motion for reconsideration, but they did include "22 pages of spreadsheet data for the years 2012 through 2020" as an exhibit to their reply.  Reply in Supp. of Mot. for Recons. at 20; see generally Limousine Spreadsheet [ECF No. 100-3].  "KELLEE" is listed as the "Default Approver ID" for many of the transactions.  E.g., Limousine Spreadsheet at 1.

AFGE and the Individual AFGE Defendants argue that this report does not merit reconsideration of this Court's prior decision.  They first maintain that plaintiffs should have notified the Court of this report before the Court published its August 2021 Order as the report was issued in May 2021 and plaintiffs' counsel received a copy on June 2, 2021.  AFGE's Opp'n to Mot. for Recons. at 6.[8]  They next claim that plaintiffs misunderstand the report; "the 'Default Approver ID' is the person who was the default approver for a given expense at the time the report was run – not the person who actually approved the expense."  Id. at 14 n.5; see also Suppl. CohnReznick Report [ECF No. 95-3] at 1 n.5 ("Default Approver ID is the current default approver as of the report run date.  It is not the actual report approver.").  Finally, defendants also contend that even if Kelley did approve many of Cox's limousine expenses, "that assumed fact says nothing about whether Kelley had actual knowledge that any of the expenditures he approved were improper – that is, used for Cox's personal benefit instead of the Union's benefit."  AFGE's Opp'n to Mot. for Recons. at 15.  Plaintiffs' main argument in response is that these arguments are factual disputes that the Court should not resolve at this stage.  Reply in Supp. of Mot. for Recons. at 20.

The Court agrees with defendants that the CohnReznick report does not justify reconsidering the Court's prior decision, but it need not resolve the parties' disputes about the proper understanding of the report at this time.  The Court's prior Memorandum Opinion dismissed

---

[8] Briefing on the motion to dismiss the second amended complaint ended in January 2021.  See Reply Mem. in Supp. of Mot. to Dismiss Second Am. Compl. [ECF No. 54] at 25.

count seven against the Individual AFGE Defendants not because it <u>found</u> that the defendants did not know about Cox's financial misconduct, but because plaintiffs failed to <u>allege</u> that any of these defendants had knowledge.  <u>Doe #1</u>, 554 F. Supp. 3d at 99 ("[T]he only NEC member <u>who is alleged</u> to have had any actual knowledge of Cox's improper expenditures was NST Hudson." (emphasis added)); <u>see also</u> Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 10–11 ("The Court dismissed Ms. Wells' section 2(h) charges against all named AFGE officers on the grounds that <u>Plaintiffs did not allege</u> . . . ." (emphasis added)).[9]  This "new" CohnReznick report does not change what plaintiffs alleged in their second amended complaint or give the Court reason to reconsider its prior decision.  Plaintiffs' arguments about the report, as well as their allegations that Hudson informed many of the Individual AFGE Defendants of Cox's financial misconduct, are arguments that are more appropriately raised in a motion for leave to amend plaintiffs' complaint, not a motion for reconsideration.[10]

### C. The Court Will Not Reinstate the Claims It Dismissed from Count Five of the Second Amended Complaint

"Section 1981 protects the right to 'make and enforce contracts' free from racial discrimination."  <u>Doe #1</u>, 554 F. Supp. 3d at 101 (quoting <u>Nanko Shipping, USA v. Alcoa, Inc.</u>, 850 F.3d 461, 467 (D.C. Cir. 2017)).  "To press a section 1981 claim, a plaintiff must identify

---

[9] The Court notes that it did not definitively decide whether count seven would state valid § 501 claims against the Individual AFGE Defendants even if plaintiffs alleged that the Individual AFGE Defendants had knowledge of Cox's misuse of AFGE resources.  <u>See Doe #1</u>, 554 F. Supp. 3d at 99 (indicating such a claim would be "conceivable").

[10] The Court recognizes that plaintiffs' motion for reconsideration does request leave to amend their third amended complaint, but plaintiffs request leave only to amend their complaint in accordance with the Court's ruling on their motion for reconsideration.  <u>See</u> Mot. for Recons. at 28–30.  While plaintiffs expand upon this request in their reply brief, <u>see</u> Reply in Supp. of Mot. for Recons. at 4–5 (requesting leave to add a new jurisdictional basis to the fourth amended complaint), even plaintiffs' expanded request does not constitute a formal motion for leave to amend the operative complaint in order to add new factual allegations.

rights 'under the existing (or proposed) contract that he wishes to make and enforce.'" Id. (quoting Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014)).

Count five of plaintiffs' second amended complaint contained several § 1981 claims brought by eight separate plaintiffs. Second Am. Compl. ¶¶ 871–73. Four of the plaintiffs were John Doe #1, Salim Javed, Waqas Kalyar, and Fahim Javed. See id. At different points in time, these four plaintiffs either owned or worked for a private limousine company that contracted with AFGE to provide transportation services. Doe #1, 554 F. Supp. 3d at 108; Second Am. Compl. ¶¶ 67, 406–07, 530, 573, 605. Plaintiffs claimed that Cox—and, by extension, AFGE and the Individual AFGE Defendants—subjected them to a racially hostile work environment in violation of § 1981. Doe #1, 554 F. Supp. 3d at 107; see Second Am. Compl. ¶ 871.

AFGE and the Individual AFGE Defendants moved to dismiss the § 1981 claims brought by these four plaintiffs, Mot. to Dismiss Second Am. Compl. at 30–32, 34–35, and the Court granted defendants' request, Doe #1, 554 F. Supp. 3d at 108–09. The Court concluded that "none of these plaintiffs ha[d] the requisite contractual relationship to bring a section 1981 claim against any defendant" as they "were never employed by AFGE" and failed to "establish[] that they individually had rights under [the private limousine companies'] contracts with AFGE." Doe #1, 554 F. Supp. 3d at 108 (citing Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999) ("Nothing in section 1981 provides a personal claim, so far as its language is concerned, to one who is merely affiliated—as an owner or employee—with a contracting party that is discriminated against by the company that made the contract.")). Hence, "although contracting parties—like

[the private limousine companies]—can bring section 1981 claims against AFGE, the affiliates of those contractors—like Doe #1, Waqas, and the Javed brothers—cannot." Id.[11]

Plaintiffs now claim that the Court's decision was mistaken because AFGE was a joint employer of the limo drivers and owners. Mot. for Recons. at 22–27. The D.C. Circuit has recognized, under "common-law principles, . . . that an individual may be jointly employed by two or more entities." Al-Saffy v. Vilsack, 827 F.3d 85, 96 (D.C. Cir. 2016). Although there is not one definitive test, the "touchstone" for identifying whether a joint employment relationship exists is "control." Id. at 97. Plaintiffs argue that AFGE jointly employed these four individual plaintiffs "because AFGE, through Defendant Cox, routinely controlled [their] terms and conditions of employment by ordering them to take him places that were not agreed to by" the limousine company and "threatened to have them fired or threatened to terminate AFGE's contract" with the limousine company if the "drivers/owners refused to follow his orders and meet his needs." Mot. for Recons. at 23.

Plaintiffs have not cited any authority for the proposition that an individual can rely on a joint-employer theory to articulate a claim under § 1981.[12] Defendants also assert that Cox and AFGE did not qualify as plaintiffs' joint employer because plaintiffs have failed to allege "that Cox (much less AFGE) actually controlled their work or any other aspect of their employment." AFGE's Opp'n to Mot. for Recons. at 18. Instead, defendants claim that the second amended

---

[11] In their motion for reconsideration, plaintiffs request—without any explanation or argument as to the Court's authority to grant this request—that if the Court declines to reinstate the § 1981 claims brought by these four plaintiffs, the Court permit one of the private limousine companies "to file a racial discrimination complaint against Defendant AFGE and Defendant Cox on behalf of its employees." Mot. for Recons. at 4. The limousine company is not a party to this case, and the Court declines to permit plaintiffs to add it as a plaintiff at this time.

[12] Plaintiffs do note this theory has been recognized in other contexts, however. See Mot. for Recons. at 24–26; see also Greason v. Se. R.R. Associated Bureaus, 650 F. Supp. 1, 4 (N.D. Ga. 1986) ("Courts considering Title VII and Section 1981 claims have adopted the liberal rules used in National Labor Relations Act cases to determine whether two or more separate business entities are so related as to be 'joint employers.' . . ."), aff'd, 813 F.2d 410 (11th Cir. 1987).

complaint "makes clear that it was the owners of the limousine companies who decided what the drivers' work responsibilities were," id. at 18–19, and defendants dispute that plaintiffs' allegations "show that a customer of the limousine service was transformed into the employer of the limousine drivers," id. at 18; see also Doe v. Lee, No. 19-cv-0085 (DLF), 2020 WL 759177, at *8 (D.D.C. Feb. 14, 2020) (rejecting joint employer theory in part because plaintiff failed to allege that the relevant entity "had any authority to hire, fire, promote, discipline or supervise [plaintiff]" and commenting that "[w]ithout more, work performed for the benefit of another entity does not reasonably imply the existence of a joint-employment relationship"). Defendants' argument seems persuasive.

But the Court need not resolve this issue because plaintiffs' joint-employer theory fails for a more fundamental reason: it is again an argument that plaintiffs could have made—but did not make—in response to defendants' motion to dismiss. That motion very explicitly argued that the four relevant plaintiffs' § 1981 claims failed due to the plaintiffs' inability to demonstrate the requisite contractual relationship with Cox or AFGE, Mot. to Dismiss Second Am. Compl. at 30–32, 34; plaintiffs chose, however, not to argue the merits of their joint-employer theory in response, see Pls.' Opp'n to Mot. to Dismiss Second Am. Compl. at 34–35. Plaintiffs offer no explanation as to why they could not have pursued this theory earlier, and allowing plaintiffs to pursue it now would be patently unfair to defendants. See Singh, 383 F. Supp. 2d at 101 ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (citation omitted)). Furthermore, while plaintiffs' theory may not be entirely frivolous, it also is not so obviously correct—even under the deferential motion-to-dismiss standard—as to render the Court's prior decision "clearly erroneous." Pueschel, 606 F. Supp. 2d at 85 (citation omitted); see also Second Am. Compl. ¶¶ 423, 438, 474, 559–61, 585,

612, 617–18, 622, 632–38, 642 (detailing incidents where plaintiffs refused Cox's requests with seemingly no official repercussions). The Court accordingly will not reinstate these four plaintiffs' § 1981 claims on the basis of plaintiffs' newly raised joint-employer theory.

    D.  <u>The Court Will Not Reinstate the Various Other State-Law Claims It Previously Dismissed</u>

Plaintiffs cursorily ask the Court to reinstate various state-law claims that the Court previously dismissed. <u>See</u> Mot. for Recons. at 21–22, 27–28. Plaintiffs do not present any new arguments in support of these requests in their motion, but in their reply, plaintiffs argue at length that the Court must exercise supplemental jurisdiction over these state-law claims or else they will be preempted under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. <u>See</u> Reply in Supp. of Mot. for Recons. at 5–14 ("Because Plaintiffs' complaint is based on Defendants' violation of the AFGE Constitution, it is completely preempted by Section 301 of the LMRA."). The Court has serious doubts about whether plaintiffs' myriad sexual harassment and discrimination claims would actually be preempted under § 301 as that section applies to "[s]uits for violation of contracts between an employer and a labor organization," and plaintiffs' claims likely more appropriately sound in tort than in contract. But once again the Court need not resolve that issue now. Not only is this argument one that could have been, but was not, raised during the prior briefing, it is also an argument that is raised for the first time in reply. "Considering an argument advanced for the first time in a reply brief . . . is not only unfair . . . , but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." <u>McBride v. Merrell Dow & Pharms., Inc.</u>, 800 F.2d 1208, 1211 (D.C. Cir. 1986) (internal citation omitted). The Court accordingly adheres to its earlier analysis and declines to reinstate the state-law claims plaintiffs have identified. <u>See</u> <u>Doe #1</u>, 554 F. Supp. 3d at 112–17 (noting that many of plaintiffs' state-law claims "not only require different elements of proof than the surviving federal claims, but also rest

on allegations about distinct incidents of harassment, assault, and discrimination based on race, sex, or religion").

*   *   *

In sum, plaintiffs have not shown that reconsideration of the Court's prior Memorandum Opinion is warranted, so their motion will be denied.  Because the Court has denied their requests for reconsideration, plaintiffs' request for leave to file a fourth amended complaint will also be denied.

## II.   Plaintiffs' Motion to Amend the First Proposed Third Amended Complaint and AFGE's Request to Strike That Complaint

Plaintiffs' first motion after the Court issued its August 2021 Memorandum Opinion requested leave to amend their first proposed third amended complaint in order to add many of the Individual AFGE Defendants as defendants to Johnson's and Kabir's § 1981 claims.  Mot. to Amend First Proposed Third Am. Compl. ¶¶ 2, 6, 17.  Plaintiffs argued that "[t]hese ten AFGE officials simply failed or refused to exercise their supervisory authority to discipline or remove Cox."  Id. ¶ 13.  AFGE moved to strike plaintiffs' third proposed amended complaint, outlining the many ways that the complaint conflicted with this Court's prior order.  AFGE's First Mot. to Strike & for Sanctions at 2–6.  Both these requests will be denied.

Plaintiffs subsequently withdrew this disputed version of the proposed third amended complaint.  See Pls.' Mot. to Withdraw the Third Am. Compls. Filed in This Case at 1; Min. Order, Oct. 12, 2021.  AFGE's request is thus clearly moot, and plaintiffs' motion is likely moot as well. Even if plaintiffs' motion is still valid, however, it is meritless.  The Court previously dismissed all § 1981 claims against the Individual AFGE Defendants in part because plaintiffs did not allege that the Individual AFGE Defendants participated directly in the discrimination plaintiffs suffered. See Doe #1, 554 F. Supp. 3d at 109–10 (explaining why Kabir's § 1981 claims against the

27

Individual AFGE Defendants failed); <u>see also</u> <u>id.</u> at 106–07 (explaining why Johnson's § 1981 claims against the Individual AFGE Defendants failed); <u>id.</u> at 117 (noting that the Individual AFGE Defendants "no longer have <u>any</u> federal claims lodged against them").  Plaintiffs' motion for leave to amend is thus really another motion for reconsideration of this Court's prior decision, and other than cursorily citing two cases for the proposition that "[i]ndividuals with supervisory authority may be held liable under Section 1981,"[13] Mot. to Amend First Proposed Third Am. Compl. ¶ 15 (citing <u>Brown</u>, 773 F. Supp. 2d at 136), plaintiffs offer no argument for why the Court should reconsider its past ruling.  The Court accordingly will neither grant plaintiffs permission to amend the first proposed version of the third complaint nor strike the complaint from the docket.

## III.    AFGE's Motion to Strike the Fourth Proposed Third Amended Complaint

AFGE's second motion to strike asks the Court to strike plaintiffs' fourth proposed third amended complaint—<u>i.e.</u>, plaintiffs' most recent third amended complaint.  AFGE's Second Mot. to Strike & for Dismissal at 4–11.  Federal Rule of Civil Procedure 12(f) grants courts the power to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  A court has "broad discretion" when considering such a motion.  <u>Uzlyan v. Solis</u>, 706 F. Supp. 2d 44, 51 (D.D.C. 2010).  Rule 12(f) supplements, but does not displace, a court's inherent authority to strike material from its docket for lack of compliance with court rules.  See <u>Ali v. Tolbert</u>, 636 F.3d 622, 627 (D.C. Cir. 2011); <u>Hlfip Holding, Inc. v. Rutherford County</u>, No. 3:19-cv-00714, 2020 WL

---

[13]  This is an assertion that plaintiffs could have made during the prior motion to dismiss briefing and that does not contradict the Court's decision to dismiss the § 1981 claims against the Individual AFGE Defendants due to their lack of personal involvement in the alleged discrimination.  See <u>Brown v. Children's Nat'l Med. Ctr.</u>, 773 F. Supp. 2d 125, 136 (D.D.C. 2011) ("Therefore, under District of Columbia law, [a plaintiff] alleging discrimination based on race may bring a Section 1981 claim not only against her employer but also against those <u>supervisors who take actions</u> in violation of Section 1981."  (emphasis added)); <u>see also</u> <u>Richard v. Bell Atlantic Corp.</u>, 946 F. Supp. 54, 74 (D.D.C. 1996) ("Officers, directors and employees of a corporation 'may become personally liable [under § 1981] when they intentionally cause an infringement of the rights secured by § 1981' . . . .  Specifically, the individuals must have been 'personally involved in the discrimination' by having 'directly participated' in the alleged discriminatory acts."  (first alteration in original) (citations omitted)).

6484254, at *2 (M.D. Tenn. Sept. 13, 2020); Cotton v. Televised Visual X-Ography, Inc., CASE No. 8:07-CV-1332-T-TGW, 2010 WL 11508116, at *2 (M.D. Fla. Mar. 1, 2010).

Plaintiffs have acknowledged that this complaint does not comply with this Court's prior Order—which required plaintiffs to file a third amended complaint that is "limited to the claims that have not been dismissed from this lawsuit and the factual allegations supporting those claims," Aug. 2021 Order at 2—because it reinstates Wells's § 501 claims against Cox for engaging in sexual misconduct. See Cross Mot. for Sanctions ¶ 50. The fourth proposed third amended complaint also violates the Court's Order in several other ways, such as by arguing that "certain unnamed AFGE officials" violated § 501 "by taking no action to discipline Cox" for his sexual misconduct, Fourth Proposed Third Am. Compl. ¶ 173; by alleging new claims not previously raised in the second amended complaint, see, e.g., id. ¶ 163 (containing Johnson's retaliation claim that the Court explicitly found was not in the second amended complaint), ¶ 168 (containing new allegations that Cox violated § 501 by ordering AFGE employees to work on his re-election campaign); and by inserting new factual allegations to remedy problems the Court identified with the second amended complaint, e.g., id. ¶¶ 18–19, 63–64 (alleging Hudson informed many of the Individual AFGE Defendants of Cox's misuse of AFGE resources).

Given these clear—and, in one instance, uncontested—violations of this Court's prior Order, the Court concludes that plaintiffs' complaint should be stricken. Claims that have been dismissed from this lawsuit are "immaterial" and/or "impertinent" as they "can have no possible bearing on the subject matter of the litigation." Cobell, 224 F.R.D. 1, 2 (D.D.C. 2004) (citation omitted). Moreover, plaintiffs' violations are flagrant enough to constitute "clear and convincing evidence that [plaintiffs] committed sanctionable misconduct that is tantamount to bad faith." Ali, 636 F.3d at 627; see also In re Vitamins Antitrust Litig., 398 F. Supp. 2d 209, 243 (D.D.C. 2005)

("A party demonstrates 'bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" (citation omitted)).  Hence, the Court will exercise its powers under Rule 12(f) and its inherent authority to strike plaintiffs' fourth proposed third amended complaint.

## IV.     The Competing Requests for Sanctions and AFGE's Requests Regarding Dismissal

Both AFGE and plaintiffs have requested that the Court impose sanctions against the other party.  AFGE's First Mot. to Strike & for Sanctions at 6–7; Cross Mot. for Sanctions ¶ 1.  AFGE has also requested that the Court warn plaintiffs that further violations of this Court's August 2021 Order will result in dismissal of plaintiffs' claims against AFGE with prejudice, AFGE's First Mot. to Strike & for Sanctions at 8, and—later—that the Court dismiss these claims with prejudice, AFGE's Second Mot. to Strike & for Dismissal at 11–12.  The Court will address plaintiffs' sanctions request before turning to AFGE's sanctions and dismissal requests.

A court has "inherent authority to impose sanctions necessary to achieve the orderly and expeditious disposition of cases before it."  Hall v. Dep't of Homeland Sec., 219 F. Supp. 3d 112, 119 (D.D.C. 2016).  Pursuant to this authority, "a federal court may sanction an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991)).  In addition to this inherent authority, a court may impose sanctions pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "While the District of Columbia has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be recklessness or the more stringent bad faith, an attorney's behavior must be at least reckless to be sanctionable."  Chandler v. Berlin,

Case No. 18-cv-02136 (APM), 2020 WL 5593905, at *6 (D.D.C. Sept. 18, 2020) (quoting <u>Lima</u>

<u>Lucero v. Parkinson Constr. Co., Inc.</u>, Civ. A. No. 18-515 (RC), 2020 WL 4464497, at *6 (D.D.C.

Aug. 4, 2020)).  "Recklessness in this context is a 'high threshold,' which only encompasses

'repeated or singularly egregious' behavior."  <u>Id.</u> (quoting <u>United States v. Wallace</u>, 964 F.2d

1214, 1219–20 (D.C. Cir. 1992)).

Plaintiffs request sanctions against AFGE for "fail[ing] to disclose to the Court the

existence of the antidiscrimination provisions contained in AFGE National Constitution Article

XXIII, Section 2(k)" when moving to dismiss Wells's § 501 claims.  Cross Mot. for Sanctions

¶ 12.[14]  Plaintiffs further claim that not only did AFGE fail to disclose this constitutional provision,

but it deliberately misled the Court by "falsely stat[ing] . . . that there is no provision in the AFGE

National Constitution that imposes a section 501 fiduciary duty on Defendant Cox and the named

Defendant AFGE officials to refrain from engaging in the constitutional offenses of" bullying,

harassment, and discrimination.  <u>Id.</u> ¶ 15.

AFGE's conduct does not meet the high standard required to warrant sanctions.  As an

initial matter, plaintiffs have not demonstrated that AFGE or the Individual AFGE Defendants

were obligated to disclose the existence of Article XXIII, §§ 2(k) or 2(j) in their motion to dismiss.

Plaintiffs have not pointed to any statute or rule imposing such a duty, but plaintiffs are presumably

relying on something similar to Rule 3.3(a)(3) of the District of Columbia's Rules of Professional

Conduct, which states that a lawyer shall not knowingly "[f]ail to disclose to the tribunal legal

authority in the controlling jurisdiction not disclosed by opposing counsel and known to the lawyer

to be <u>dispositive of a question at issue</u> and directly adverse to the position of the client."  D.C. R.

---

[14] Plaintiffs' cross motion for sanctions contains paragraphs that are not always consecutively numbered. The motion contains consecutively numbered paragraphs from one to 12, but the next paragraph restarts at eight.  <u>See</u> Cross Mot. for Sanctions at 5.  The paragraph 12 cited above is the second paragraph 12 in plaintiffs' cross motion.

Prof. Conduct 3.3(a)(3) (emphasis added); see also L. Civ. R. 83.15(a) (incorporating D.C.'s Rules of Professional Conduct).  As the Court has explained, the constitutional provisions that plaintiffs now seize upon are not dispositive given the uncertain scope of a union official's fiduciary duties under § 501(a).

Plaintiffs also have not shown that AFGE or the Individual AFGE Defendants misled the Court about the AFGE constitution.  Plaintiffs focus on two statements by AFGE and the Individual AFGE Defendants.  See Reply in Supp. of Cross Mot. for Sanctions at 7.  The first of these statements is:

> Wells' first Section 501 claim has nothing whatsoever to do with Cox's or the 13 Individual AFGE Defendants' conduct of AFGE's internal affairs in alleged nonconformity with their asserted duties under the AFGE Constitution.  Rather, as we have emphasized, Wells' first Section 501 claim is, in substance, a thinly disguised state-law tort claim . . . .

Id. (quoting Mot. to Dismiss Second Am. Compl. at 12).  The second statement is:

> Plaintiffs do not even attempt to point to a provision in AFGE's Constitution that creates a free-floating obligation on the part of any of the 13 Individual AFGE Defendants to prevent the AFGE President from committing common-law torts or to take remedial action with respect to such tortious conduct . . . .

Id. (quoting Reply Mem. in Supp. of Mot. to Dismiss Second Am. Compl. at 7).

The Court agrees with AFGE that these statements are comments on plaintiffs' failure to support their claims with appropriate citations and arguments, not false assertions about the contents of the AFGE constitution.  See Opp'n to Cross Mot. for Sanctions at 2.  The Court also notes that AFGE invited the Court to take judicial notice of the AFGE constitution in its motion to dismiss the second amended complaint, Mot. to Dismiss Second Am. Compl. at 25 n.13, and that

plaintiffs do not request sanctions for AFGE's "misrepresentations" with entirely clean hands.[15] Plaintiffs' cross motion for sanctions will therefore be denied.

Plaintiffs' conduct, on the other hand, warrants some monetary sanctions. By filing several third amended complaints—all of which differ from each other and none of which comply with this Court's August 2021 Order—plaintiffs multiplied the proceedings in this case unreasonably and vexatiously. See 28 U.S.C. § 1927. The Court has thoroughly detailed plaintiffs' noncompliance throughout this Memorandum Opinion and will not repeat itself at length here, but a few of the more egregious violations include reinstating claims the Court had explicitly rejected, e.g., First Proposed Third Am. Compl. ¶ 485 (Johnson's hostile work environment and retaliation claims)[16]; Second Proposed Third Am. Compl. ¶¶ 194–208 (Johnson's negligent supervision claims)[17]; Fourth Proposed Third Am. Compl. ¶¶ 170–73 (Wells's § 501 claims stemming from Cox's non-financial-based misconduct)[18], and inserting new claims and allegations into the revised pleadings, e.g., First Proposed Third Am. Compl. ¶ 494 (Kabir's new retaliation and wrongful termination claims); Fourth Proposed Third Am. Compl. ¶¶ 18, 63 (new allegations that Hudson informed many of the Individual AFGE Defendants of Cox's financial misconduct); Fourth Proposed Third Am. Compl. ¶ 168 (alleging a new § 501 claim for Cox's misuse of AFGE employees during his re-election campaign). These actions are such blatant violations of this Court's directive that plaintiffs "file a third amended complaint that is consistent with the [August 2021] Memorandum Opinion . . . [and that is] limited to the claims that have not been dismissed

---

[15] Numerous times during this litigation, plaintiffs have selectively quoted from this Court's description of other courts' different views on the scope of § 501(a) to imply that the Court actually adopted the broad view of the statute. See, e.g., Cross Mot. for Sanctions ¶ 3; Mot. for Reconsideration at 11. The Court described the broad view of § 501(a) only after describing the narrow view, Doe #1, 554 F. Supp. 3d at 93–94, and it explained both that there are limits under even the broad view and that the Court did not adopt either position, id. at 94.

[16] Doe #1, 554 F. Supp. 3d at 106, 107 n.16, 118.

[17] Doe #1, 554 F. Supp. 3d at 120–21.

[18] Doe #1, 554 F. Supp. 3d at 93–97.

from this lawsuit and the factual allegations supporting those claims," Aug. 2021 Order (emphasis added), that they constitute clear and convincing evidence of bad faith and unreasonable and vexatious conduct.

Plaintiffs raise two main arguments in opposition to this conclusion.  First, they claim that sanctions are not warranted because they withdrew the first two versions of their third amended complaint with leave of court.  Opp'n to AFGE's First Mot. to Strike & for Sanctions ¶ 49.  But this argument ignores two facts: defendants moved to strike before plaintiffs withdrew any complaint and, by repeatedly violating this Court's Order, plaintiffs "multiplied the proceedings in this case," 28 U.S.C. § 1927, and delayed and disrupted this litigation, see In re Vitamins, 398 F. Supp. 2d at 243.  The fact that the Court permitted plaintiffs to withdraw their noncompliant filings does not mean that those filings caused no harm.  Regardless, plaintiffs' violations were not limited to the complaints that they withdrew.

Plaintiffs' second argument is that the Court must deny AFGE's motion because AFGE has refused to meet and confer to attempt to resolve the parties' disputes.  Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 2–3.  In support of this argument, plaintiffs have attached emails between counsel indicating counsel's different positions on issues such as whether or not the parties should request a joint telephone conference with the Court.  Emails Between Counsel [ECF No. 82-1].  Plaintiffs also cite a case where a court stated that "[a] motion for sanctions . . . must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action."  Pls.' Opp'n to AFGE's Second Mot. to Strike & for Dismissal at 2–3 (second alteration in original) (quoting Simms v. Ctr. for Corr. Health & Pol'y Stud., 272 F.R.D. 36, 39 (D.D.C. 2011) (quoting Fed. R. Civ. P. 37(d)(1)(B))).

There are many flaws in this defense.  As an initial matter, it does not grapple with a court's inherent authority to sanction a party for noncompliance with its orders.  Also, the case plaintiffs cite discusses the requirements for imposing sanctions for misconduct <u>during discovery</u> under Federal Rule of Civil Procedure 37.  <u>Simms</u>, 272 F.R.D. at 39.  Unlike Rule 37, 28 U.S.C. § 1927 does not contain any certification requirement.  And while Local Rule 7(m) does require a party filing a "nondispositive motion" to include a statement certifying that the parties met and conferred on the request, L. Civ. R. 7(m), AFGE's first motion to strike and for sanctions includes such a certification, <u>see</u> AFGE's First Mot. to Strike & for Sanctions at 9.  Finally, the Court does not take the same view of the emails between the parties' counsel as plaintiffs do.  For instance, plaintiffs state that one email represents AFGE's counsel's "decision not to meet and confer," but that email states that AFGE's counsel did "not understand [plaintiffs' counsel's] note to be a request for our position, pursuant to Rule 7(m), on any specific relief Plaintiffs seek from the Court."  Emails Between Counsel at 2.  These emails are simply not the damning exchanges plaintiffs seem to believe that they are.

Hence, for the reasons explained above, the Court concludes that monetary sanctions are warranted.  Because the Court believes the misconduct in this case was the fault of plaintiffs' counsel, and not plaintiffs themselves, the Court will order plaintiffs' counsel to pay AFGE the costs and attorneys' fees it expended litigating its two motions to strike.  These costs shall not include the costs AFGE incurred responding to plaintiffs' cross motion for sanctions or their motion for reconsideration as AFGE has not argued or demonstrated that these motions were so frivolous as to merit a financial sanction.

Finally, the Court must resolve AFGE's separate requests for an order warning plaintiffs that further violations of the August 2021 Order would result in dismissal with prejudice, AFGE's

First Mot. to Strike & for Sanctions at 8–9, and for dismissal with prejudice due to plaintiffs' numerous non-compliant filings, AFGE's Second Mot. to Strike & for Dismissal at 11–12.

A court's inherent authority to sanction a party in order to manage its docket efficiently includes the power to "dismiss a case . . . for a plaintiff's failure to . . . comply with a court order." Holston v. Vance-Cooks, Civ. A. No. 12-CV-1546(KBJ), 2013 WL 5912475, at *1 (D.D.C. Nov. 5, 2013) (quoting Angelino v. Royal Family Al-Saud, 688 F.3d 771, 775 (D.C. Cir. 2012)). Federal Rule of Civil Procedure 41(b) also grants a court the power to dismiss an action for failure to comply with a court order. "There are three basic justifications for dismissal because of attorney misconduct: (1) prejudice to the other party; (2) failure of alternative sanctions to mitigate the severe burden that the misconduct has placed on the judicial system; and (3) deterrence of future misconduct." Gardner v. United States, 211 F.3d 1305, 1309 (D.C. Cir. 2000). A court has discretion when deciding whether to dismiss a case under Rule 41(b), Keys v. Wash. Metro. Area Transit Auth., 523 F. App'x 727, 728 (D.C. Cir. 2013), and "[a]lthough 'dismissal may be an unduly severe sanction for a single episode of misconduct,' a court acts properly in dismissing a case 'when lesser sanctions would not serve the interest of justice,'" Allen v. United States, 277 F.R.D. 221, 223 (D.D.C. 2011) (quoting Bristol Petroleum Corp. v. Harris, 901 F.2d 165, 167 (D.C. Cir. 1990)).

While the Court might be justified in dismissing plaintiffs' claims against AFGE given the egregiousness of plaintiffs' misconduct, the Court will not do so at this time. Plaintiffs have not yet received any warnings from this Court[19] about the possible consequences of their actions, and the Court hopes that this decision and the imposition of monetary sanctions will deter any future

---

[19] The Court is aware, however, that plaintiffs' counsel has been sanctioned by other judges in this District. See AFGE, AFL-CIO v. Hudson, No. 1:18-cv-1230 (FYP), 2022 WL 3098770, at *1 (D.D.C. Aug. 4, 2022); Hillman v. AFGE, Case No. 1:18-cv-999-RCL, 2022 WL 2817750, at *1 (D.D.C. July 19, 2022) ("Four times now, this Court has sanctioned plaintiffs.").

misconduct.  Plaintiffs will be given another opportunity to file a third amended complaint that complies with this Court's orders.  This opportunity does not give plaintiffs leeway to add claims beyond those identified in the Court's August 2021 Order or factual allegations beyond those that were raised in the second amended complaint and are consistent with this Court's decisions.  After filing a complaint that complies with these limitations, plaintiffs may file any appropriate motion for leave to amend, but they may not file a complaint that presumes such a motion will be granted. Plaintiffs are warned that failure to comply with these instructions may have serious consequences, including dismissal of their claims.

### Conclusion

For the foregoing reasons, the Court will deny plaintiffs' motions for reconsideration, sanctions, and leave to amend the first proposed version of their third amended complaint.  The Court will grant AFGE's request for sanctions and for an order warning plaintiffs that violation of this Court's orders may result in dismissal of their claims with prejudice, but the Court will not dismiss those claims at this time.

Although roughly a year has passed since this Court's August 2021 Order, this case is in essentially the same place now as it was then.  The only live claims in this litigation remain: "Wells's breach-of-fiduciary duty claim against Cox under 29 U.S.C. § 501(b) (Count 7); Johnson's wrongful termination claims against AFGE and Cox under 42 U.S.C. § 1981 (Count 5); and Kabir's racially hostile work environment claims against AFGE and Cox under section 1981 and the DCHRA (Counts 5 & 9)."  Doe #1, 554 F. Supp. 3d at 125.  The Court sincerely hopes to move this litigation forward toward resolution.  But the Court's desire for plaintiffs' claims to receive the consideration to which they are entitled will not prevent it from dismissing this case

with prejudice should plaintiffs again disregard this Court's instructions.   A separate Order

consistent with this Memorandum Opinion will issue on this date.


$$\text{/s/}$$
JOHN D. BATES
United States District Judge


Dated:  September 13, 2022