IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROCKY KABIR

Plaintiff.

v.

Civil Action 20-1558 (JDB)
JURY TRIAL DEMANDED

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES ("AFGE")
JEFFERY DAVID COX

Defendants.

## FOURTH AMENDED COMPLAINT

### ROCKY KABIR'S RACIAL DISCRIMINATION CLAIMS

1. Plaintiff Rocky Kabir, a Southeast Asian, files this action for compensatory damages, punitive damages, injunctive relief, declaratory judgment to remedy racial discrimination by Defendant AFGE, Defendant Cox who violated his rights protected by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 and related D. C. statutes.

2. Plaintiff Rocky Kabir interviewed with AFGE Deputy Chief of Staff Corey Bythrow for the position of Confidential Secretary to the National President and was hired by AFGE on December 12, 2016, at the annual rate of approximately $62,000. Within three weeks after Defendant AFGE hired Mr. Kabir, Defendant Cox began to racially discriminate verbally abusing Mr. Kabir and other men of color in Mr. Kabir's presence.

3. In April 2017, AFGE Communications Director Brett Copeland witnessed Defendant Cox verbally abuse Mr. Kabir by calling him a racial and ethnic slur. Mr. Copeland promptly reported Cox's abuse to AFGE General Counsel no further action. Within two weeks of the

RECEIVED
OCT - 5 2022
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

incident, Mr. Copeland resigned.

4. AFGE rules state that no AFGE headquarters staff can provide personal, campaign-related duties for AFGE officers. Defendant Cox by ordering Mr. Kabir to work on his re-elections campaign and other personal duties, broke this rule.

5. Defendant Cox ordered Mr. Kabir to accompany Cox on most of his AFGE business trips in the District of Columbia Metropolitan area and across the United States. As a result, Mr. Kabir accompanied Defendant Cox on approximately 80% Cox's AFGE-related business trips.

6. Defendant Cox regularly shouted at, harassed, threatened and used the racial slurs "boy" and "son" when he spoke to Limousine drivers of color in Mr. Kabir's presence. Defendant Cox often cursed at Mr. Kabir and called Mr. Kabir "boy", "son" and "sand nigger" racial and ethnic slurs in the presence of Waqas "Vic" Kalyar and Derrell Jordan.

7. Over Mr. Kabir's strong objections, on more than 50 occasions, Defendant Cox ordered Mr. Kabir to serve as Defendant Cox's personal "servant" by serving alcohol and food while Defendant Cox entertained his male guests at Defendant Cox's Silver Spring, Maryland apartment and hotel rooms. During those sessions and on other occasions, Cox and used the racial slurs "boy" and "son" when ordering Mr. Kabir around. Cox regularly threatened to fire Mr. Kabir if he did not do what Cox told him to do. Mr. Kabir could not afford to lose his job because he had a child to support, and for that reason, Mr. Kabir did not refuse Defendant Cox's orders even though he strongly objected to them.

8. Defendant Cox often required Mr. Kabir to accompany Cox to his North Carolina home to serve Cox and perform menial tasks such as cleaning the attic and yard of Defendant Cox's North Carolina home, do grocery shopping for Cox and perform other menial tasks that were

outside the scope of Mr. Kabir's duties as Confidential Secretary to the National President. During these times while Mr. Kabir performed such personal duties at Cox's North Carolina home, Defendant Cox ordered Mr. Kabir around using the racial slurs "boy" and "son" over Mr. Kabir's strong objections.

9. Defendant Cox regularly spoke to Plaintiff Kabir in the most offensive, derogatory and racist terms, calling him "boy" and "son" and other ethnic and religious epithets as Cox ordered Mr. Kabir to perform personal tasks that were outside the scope of Mr. Kabir's employment like helping Defendant Cox to use the toilet, get in and out of the shower, accompanying Cox to the hospital and nursing Cox.

10. Defendant Cox ordered Plaintiff Kabir to be on call to serve him 24 hours a day, seven days a week as his personal "servant." Defendant Cox did not pay Mr. Kabir out of his own pocket for Mr. Kabir's personal work for Defendant Cox. Rather, Cox demanded that Mr. Kabir serve Cox in his capacity as AFGE National President as part of Mr. Kabir's duties as Confidential Secretary to the National President.

11. Cox often reminded Mr. Kabir that Cox's name was on Mr. Kabir's AFGE paycheck and that Cox would fire him if Mr. Kabir refused any of Cox's demands. Defendant Cox's used Mr. Kabir as his personal "servant" in violation of the AFGE Use of Resources Rule that prohibits an AFGE official from using AFGE staff for personal purposes.

12. Defendant Cox Ordered Plaintiff Kabir to Work on Cox's 2018 AFGE Re-Election Campaign and Mr. Cox's build GoFundMe website in violation of the AFGE National Constitution, the AFGE "No Politics" Rule, and AFGE "Use of Resources" Rule.

13. Defendant Cox did not pay Mr. Kabir for working on Cox's 2018 AFGE re-election

campaign and GoFundMe website which Mr. Kabir values at approximately $20,000.

14. While Mr. Kabir worked on Cox's 2018 AFGE re-election campaign, Defendant Cox often verbally abused and subjected Plaintiff Kabir to intense scorn, ridicule and a racially hostile work environment.

15. Defendant Cox was Mr. Kabir's direct supervisor. Defendant Cox was also the perpetrator of discrimination. Mr. Kabir often complained verbally to Defendant Cox about Cox's racial discrimination, racial slurs and ethnic slurs misconduct toward himself and others. Plaintiff Kabir also complained to Defendant Cox's Executive Assistant Shannon Harvey, Chief of Staff Brian DeWyngaert's Executive Assistant Denene Colbert, and to AFGE Policy Director Jacqueline Simon, all of whom reported to David Cox. Defendant Cox and Defendant AFGE took no remedial or disciplinary action to stop Defendant Cox's racially discriminatory treatment of Mr. Kabir.

16. In or about July 2018, Mr. Kabir became so intimidated, exhausted and stressed by Cox's constant, demeaning, treatment of himself, and other men of color that Mr. Kabir informed Cox that he would not be on call to work for Cox 24 hours a day, 7 days a week.

17. After Mr. Kabir complained to Cox directly, Defendant Cox waited about a month until after winning the August 2018 AFGE National Convention and retaliated by directing Limo owner and Cox's long-time driver Waqas (Vic) Kalyar to inform Mr. Kabir that Mr. Kabir must immediately submit his resignation to AFGE and return his laptop and other AFGE items.

18. Plaintiff Kabir resigned from AFGE as directed by Cox, causing Plaintiff Kabir severe emotional pain, suffering, distress and anguish. Plaintiff Kabir is currently receiving psychological counseling to recover from his traumatic discriminatory treatment by Cox.

19. Mr. Kabir suffered severe economic loss after Cox forced him to resign as he had to pull

$23,000 in funds from his 401(k)-retirement fund to sustain himself and his young daughter until he could find new employment.

## PRAYER FOR RELIEF

I ask that the Court to help me recover my losses from my savings, unpaid work and any further relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ Rocky*

Rocky Kabir
712 H Street NE Suite 1531
Washington DC 20002
rocky.kabir@gmail.com
212.810.0555